Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 14, 2003      Decided August 19, 2003

No. 00-3120

UNITED STATES OF AMERICA,
APPELLEE

v.

MILTON J. TAYLOR,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 97cr00035-01)

———

*Elaine J. Mittleman*, appointed by the court, argued the cause and filed the briefs for appellant.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher*, *Thomas J. Tourish, Jr.*, and *S. Elisa Poteat*, Assistant U.S. Attorneys.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Barbara J. Valliere*, *Kenneth W. Cowgill*, and *Mary-Patrice Brown*, Assistant U.S. Attorneys, entered appearances.

Before:  TATEL and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Milton Taylor contends that he was denied the effective assistance of counsel because his attorney did not file a notice of appeal from the sentence Taylor received after pleading guilty to a federal offense.  We conclude that Taylor's counsel was not constitutionally ineffective under the test set forth in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), and we therefore affirm the judgment of the district court.

I

On January 28, 1997, a federal grand jury indicted Taylor and co-defendant Antoinette Stoddard on twelve counts of violating federal and District of Columbia law in connection with a scheme involving the theft of personal checks from the mail, the creation or acquisition of false identification matching the names on the stolen checks, the forging of signatures on the checks, and the passing of the forged checks at area stores.  Taylor and Stoddard recruited others to assist in various aspects of the scheme, particularly in the exchange of the checks for store merchandise.

On May 19, 1997, Taylor entered into a written agreement to plead guilty to one count of possession of stolen mail in violation of 18 U.S.C. § 1708, in return for the government's agreement to drop the other charges and to terminate its investigation of his activities.  The agreement described the parties' joint understanding of which United States Sentencing Guidelines (U.S.S.G.) would likely apply to the case, but also recited Taylor's understanding that he faced a maximum sentence of five years, that "the sentence to be imposed on him . . . [would] be determined solely by the Court," and that "he [could not] withdraw his guilty plea" if the court imposed a sentence greater than that provided by the guidelines.

Plea Agreement ¶ 3 (May 19, 1997). It further noted, however, that Taylor "may have a right [to] appeal" the sentence. *Id.* ¶ 3(c).

On the same day, the district court conducted the plea hearing required by Federal Rule of Criminal Procedure 11. During the course of the hearing, Taylor's counsel, Shawn Moore, told the court that he had advised Taylor that his "preliminary calculations" indicated a Sentencing Guidelines range of ten to sixteen months' imprisonment. 5/19/97 Tr. at 21. The court then warned Taylor that it would make its own guidelines calculations, that it alone would decide the final sentence, and that it was not possible to predict what the result would be. Taylor said he understood, and after completing the requirements of Rule 11, the court accepted Taylor's plea.

The Presentence Investigation Report (PSR) prepared by the United States Probation Office matched Moore's guidelines calculations in all respects except one: the PSR recommended an additional four-level enhancement under U.S.S.G. § 3B1.1(a), based on Taylor's role as an organizer or leader of the criminal activity involved in the scheme. Taylor filed an objection to the report, contending that, at most, a three-level enhancement was appropriate under § 3B1.1(b). On November 4, 1997, the district court conducted a presentence hearing at which the prosecutor informed the court that she had eleven witnesses available to testify regarding Taylor's role if he truly meant to contest the issue.

The sentencing hearing was held on November 13, 1997. In his opening statement, Moore declared the defense's desire to withdraw its objection to the four-level "organizer or leader" enhancement. After reviewing the evidence and the law, the court concluded that the enhancement was appropriate. It then calculated the relevant Sentencing Guidelines range as 21 to 27 months' imprisonment (plus time on supervised release). At that point, the court advised the parties that the remaining issue was where within that range the defendant should be sentenced. When given his turn to speak, Taylor complained that it was not he but his co-

defendant, Stoddard, who had been the "mastermind" of the scheme.

The court sentenced Taylor to 27 months' imprisonment, to be followed by 36 months of supervised release. After pronouncing the sentence, the court advised Taylor of his right to appeal. Taylor then, unbidden, asked the court if he could "get an order forthwith," by which he apparently meant a direction to the U.S. Marshals to take him directly to a federal prison without stopping at the D.C. Jail. 11/13/97 Tr. at 30. After saying it would do what it could to accommodate him, the court asked Taylor whether there was "[a]nything else." *Id.* at 32. Taylor responded that, despite suggestions to the contrary by the government, he had never intimidated any witnesses. After the judge assured Taylor that he had not taken the allegations of intimidation into account in setting the sentence, Taylor thanked the court and the hearing concluded.

Neither Taylor nor his counsel filed a notice of appeal within the ten-day period fixed by Federal Rule of Appellate Procedure 4(b)(1)(A). However, on March 16, 1998, Taylor sent a letter to the district court, raising a number of challenges to his conviction and sentence. In particular, he contended that Moore had failed to honor Taylor's request, allegedly made immediately after the sentencing hearing, that he file a notice of appeal on Taylor's behalf. Taylor also alleged that his wife had tried to contact Moore to ask him to file an appeal, but that Moore had failed to respond to two telephone messages that she had left with his secretary.

The district court treated Taylor's letter as a motion to vacate his sentence under 28 U.S.C. § 2255. The court appointed an attorney to represent Taylor, and the attorney supplemented Taylor's initial letter by adding two new claims of ineffective assistance of counsel: that Moore had failed to investigate and pursue an entrapment defense, and that he had been ineffective in failing to anticipate the four-level enhancement under § 3B1.1(a). On August 14, 2000, the district court denied those two claims. The court held that Moore had in fact investigated a possible entrapment defense,

but that he had rightly concluded there was no basis for such a defense.  It further held that Moore's failure to predict the § 3B1.1(a) enhancement was not prejudicial because the court itself had made clear to Taylor, before accepting his plea, that his sentence would be determined by the court and could not be predicted.

This left only the question of whether Moore had been constitutionally ineffective in failing to file a notice of appeal. The court held an evidentiary hearing on that question on November 8, 2000.  Taylor testified that before he was taken from the courtroom after the sentencing, he had personally asked Moore to file an appeal.  Taylor's wife testified that she had called Moore to ask him to do the same, but that he had not returned her messages.  In contrast, Moore testified that Taylor had never asked him to appeal and that he had never received any messages from Taylor's wife.  The court credited Moore's testimony.  Applying *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the court concluded that Moore had not been constitutionally ineffective in failing to file a notice of appeal because:  Taylor had not asked Moore to file an appeal;  there was no reason to believe that a rational defendant would have wanted to appeal;  and Taylor had not otherwise demonstrated any interest in appealing.

Taylor filed a notice of appeal from the district court's dismissal of his § 2255 motion on November 17, 2000.  We directed the court to determine whether a certificate of appealability should issue, *see* 28 U.S.C. § 2253(c), and thereafter the district court issued a certificate with respect to three ineffectiveness claims:  (1) Moore's failure to file a notice of appeal;  (2) Moore's failure to pursue a possible entrapment defense while advising Taylor to accept a plea; and (3) Moore's incorrect calculation of the defendant's possible Sentencing Guidelines range when explaining the consequences of pleading guilty.  Before this court, Taylor has briefed and argued only the first claim, and has further limited that claim to Moore's failure to file an appeal of the four-level enhancement of § 3B1.1(a).  The defendant has not argued the other two claims, which effectively go to the question of whether he should be permitted to withdraw his

plea. Taylor has adopted this strategy, we assume, because he has little to gain and much to lose by withdrawing his plea and submitting his case to a jury: the evidence of his guilt appears to be overwhelming, while the plea bargain agreed to by the government is, in the district court's apt description, a "generous" one. 11/8/00 Tr. at 103.

Taylor's briefs ask us to hold the other two claims in abeyance, and to permit supplemental briefing if we determine that he is not entitled to a direct appeal. But those issues were decided by the district court and are ripe for our consideration. Accordingly, Taylor was required to raise them in his opening brief, and his failure to do so constitutes waiver as far as this appeal is concerned. *See Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002) (holding that when an appellant fails to brief claims on which a certificate of appealability has issued, those claims are waived); *see also Artis v. Greenspan*, 158 F.3d 1301, 1302 n.1 (D.C. Cir. 1998); *Terry v. Reno*, 101 F.3d 1412, 1415 (D.C. Cir. 1996).[1] That leaves for our consideration only the question of whether Taylor's counsel was constitutionally ineffective for failing to file a notice of appeal from the sentence imposed by the district court.

## II

In general, claims of ineffective assistance of counsel are governed by the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that test, a defendant claiming ineffective assistance must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687–88; *see Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985) (applying the *Strickland* framework to ineffective assistance claims in the context of guilty pleas). In *Roe v. Flores-Ortega*, the Supreme Court extended *Strickland* to claims of ineffective assistance based on a defense attorney's failure to file a notice of appeal. 528 U.S. at 476–77. Because we conclude that Taylor cannot satisfy the first prong

---

[1] Taylor's brief "presum[es]" that he may raise the two claims in a subsequent motion under 28 U.S.C. § 2255. Appellant's Br. at 10. Although we doubt that those claims survive his waiver here, that issue is not before us.

of the *Strickland* test, we need not consider the second-prong issue of whether Taylor was prejudiced. *See Strickland*, 466 U.S. at 697.

*Flores-Ortega* directs that the first question we must examine under *Strickland*'s reasonableness standard is whether the defendant instructed his attorney to file an appeal. *Flores-Ortega*, 528 U.S. at 477. As the Court said, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* At the § 2255 evidentiary hearing, Taylor testified that after the sentencing he expressly told Moore that he wanted to appeal; in addition, Taylor's wife testified that she called Moore to ask him to file the necessary papers, leaving messages when she was unable to reach him. Moore testified that Taylor had never told him, after the sentencing or at any other time, that he wanted to appeal; nor did Moore ever receive a message from Taylor's wife.

The district judge, having heard the witnesses testify in person, credited Moore's version of the events. He did so based not only on Moore's and Taylor's specific testimony, but also on his opportunity to observe both of them during the evidentiary hearing: "I have a lot of problems with Mr. Taylor's credibility based on my experience in this case and I don't have problems with Mr. Moore's credibility." 11/8/00 Tr. at 100. Moreover, the judge noted that, although he had personally advised Taylor of his right to appeal and had given him several opportunities to say anything he wanted, and although Taylor "was not reticent during the course of the sentencing proceedings, [speaking] up several times," the defendant had never mentioned an appeal. *Id.* at 98. On these grounds, the court found that neither Taylor nor his wife had asked (or attempted to ask) Moore to file an appeal. We review "[t]he district court's findings of fact in [this] collateral proceeding . . . under the deferential 'clearly erroneous' standard," *United States v. Streater*, 70 F.3d 1314, 1318 (D.C. Cir. 1995), and we perceive no clear error here.

Where a defendant did not instruct his attorney to appeal, *Flores-Ortega* requires that we determine whether the defendant "explicitly [told] his attorney *not* to file an appeal,"

because if so he "cannot later complain that, by following his instructions, his counsel performed deficiently." 528 U.S. at 477. As no one contends that was the case here, we must next ask "whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. If he did, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* Again, there is no dispute that, while Moore did advise Taylor in advance of the sentencing hearing that he would have the right to appeal, counsel did not consult with the defendant about an appeal after the sentence was pronounced.

This brings us to the last question *Flores-Ortega* makes relevant to this case: "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* Although the Court made clear "that the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal," it "reject[ed] a . . . rule that counsel must always consult with the defendant regarding an appeal." *Id.* at 479–80. Instead, the Court said, "counsel has a constitutionally imposed duty to consult" only when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* We now turn to these two parts of the *Flores-Ortega* test.

## A

*Flores-Ortega* indicates that "there is reason to think . . . that a rational defendant would want to appeal" where "there are nonfrivolous grounds for appeal." *Id.* We do not perceive any nonfrivolous grounds here. The only ground urged in Taylor's briefs is that the sentencing court erred in enhancing his guidelines offense level pursuant to U.S.S.G. § 3B1.1(a). That guideline instructs the sentencing court to increase a defendant's offense level by four "[i]f the defendant was an organizer or leader of a criminal activity that involved

five or more participants or was otherwise extensive." U.S.S.G. MANUAL § 3B1.1(a). Based on Taylor's admissions to the Probation Office, the district court made findings that put Taylor comfortably within the category of defendants to which this guideline applies:

> [H]e acknowledges that there were more than five people involved in the scheme . . . so therefore . . . I find that there were as required by 3B1.1 the five or more partici-pants. . . . And I find . . . the statements in the presen-tence report, many of which Mr. Taylor himself . . . provided to the probation officer, make him an organizer, and a leader. Looking at the application note [for] 3B1.1, he had decisionmaking authority. He recruited some of the accomplices and he clearly controlled and exercised authority over the others in the scheme. Whether or not he and Miss Stoddard had an equal level of control or whether she was his lieutenant or whether she initiated it, clearly his activities constituted leader-ship of the scheme, and I think under the case law and the application notes there doesn't have to be a single leader of the scheme. There can be more than one to justify the four point upward adjustment. . . . I find that the four points should be added.

11/13/97 Tr. at 15–16. Taylor has not challenged any of the district court's factual findings. Even if he had, we would accept those findings "unless they [were] clearly erroneous." 18 U.S.C. § 3742(e); *see United States v. Wilson*, 240 F.3d 39, 46 (D.C. Cir. 2001). Since the court's findings were based on Taylor's own admissions to the Probation Office, there is no basis for our regarding them as error.[2]

Taylor suggests that the district court's error was in apply-ing the law to the facts, because Stoddard, not he, was the "ringleader" of the conspiracy. Even if true, the district

---

[2] Taylor admitted that he had "recruited [a total of seven] individ-uals for participation [in the scheme], accompanied them when they obtained fraudulent identification and went on their shopping sprees, dictated the items to be purchased by the individuals, and received a larger share of the profits and merchandise." PSR at 37.

court correctly noted that Taylor would nonetheless remain within the compass of § 3B1.1(a). As Application Note 4 to the guideline explains:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. *There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.*

U.S.S.G. MANUAL § 3B1.1, cmt. n.4 (emphasis added); *see Wilson*, 240 F.3d at 46. We owe the district court's application of the guidelines to the facts "due deference." 18 U.S.C. § 3742(e). Moreover, because Taylor withdrew his objection to the application of § 3B1.1(a) during the sentencing hearing, on direct appeal we would review the court's determination only for plain error. *See* FED. R. CRIM. P. 52; *United States v. Olano*, 507 U.S. 725, 732 (1993). In light of Taylor's admissions and the text of the application note, the possibility that we would find plain error is vanishingly small.

Nor can we conceive of any other ground upon which Taylor might have based a sentencing appeal. And we are not alone. When Taylor's appellate counsel was pressed at oral argument, she could offer no ground other than the alleged error in applying § 3B1.1(a). She did, however, direct us to the Supreme Court's statement, which appears in the section of *Flores-Ortega* discussing *Strickland*'s prejudice prong, that "it is unfair to require an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." 528 U.S. at 486 (emphasis omitted). But that

admonition does not apply here: the district court appointed counsel to represent Taylor during his § 2255 proceeding, and we appointed counsel to represent him on appeal. Yet, despite the fact that two advocates have now reviewed the record "in search of potentially meritorious grounds for appeal," none has appeared.

*Flores-Ortega* also instructs that, in considering whether counsel had a constitutionally imposed duty to consult with the defendant about an appeal, "a highly relevant factor . . . will be whether the conviction follows a . . . guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480. Although the latter point seems to us to go more to the second part of the *Flores-Ortega* test than to the first, the former point is certainly relevant here: Taylor did plead guilty, and that plea did in fact reduce the scope of potentially appealable issues — to the degree that Taylor had nothing left other than the frivolous § 3B1.1 claim discussed above.

*Flores-Ortega* further directs that "[e]ven in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* For reasons considered in Part II.B, the first of these factors, whether Taylor received the sentence for which he had bargained, is of no assistance to him. Nor is the second factor of any help, because while Taylor did not waive the right to appeal his sentence, he had no nonfrivolous issue upon which to base any such appeal.

In sum, Taylor has not proffered any ground that would have given his counsel "reason to think . . . that a rational defendant would want to appeal" the sentence that was imposed on him. *Id.* Accordingly, he cannot satisfy the first part of the *Flores-Ortega* test.

B

The second part of the *Flores-Ortega* test requires us to determine whether "there is reason to think . . . that this

particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. In making that determination, we "must take into account all the information counsel knew or should have known." *Id.* One thing Taylor's lawyer knew was that his client had pled guilty, thus indicating that he sought "an end to judicial proceedings." *Id.* Taylor asserts, however, that his counsel also knew that he had not "received the sentence bargained for as part of the plea." *Id.*

But Taylor's assertion is not quite accurate. As part of the plea agreement, the prosecution dropped eleven charges of forging and passing checks stolen from the mail, and pledged not to indict Taylor on further charges that might evolve from a still-ongoing investigation of "Treasury check forgeries and thefts." Plea Agreement ¶ 2. In exchange, Taylor agreed to plead to a single count of theft or receipt of stolen mail, with the "understand[ing] that the sentence to be imposed in [the] case [would] be determined in accordance with" the Sentencing Guidelines. *Id.* ¶ 3. As Part I demonstrates, that is exactly how Taylor's sentence was determined. And while it is true that his defense counsel made sentencing predictions that failed to take into account the four-level enhancement of § 3B1.1(a), the district court clearly advised Taylor that it would do its "own analysis under the guidelines," that the court would make the final decision regarding Taylor's sentence, and that "no one knows yet what your sentence would be." 5/19/97 Tr. at 24, 28. When Taylor said that he understood and wanted to plead guilty nonetheless, he accepted the possibility — as part of the "sentence bargained for" — that the court's guidelines calculation would differ from that of his lawyer. *See United States v. Horne*, 987 F.2d 833, 837–38 (D.C. Cir. 1993).

Moreover, there was still more that defense counsel knew regarding whether Taylor was satisfied with his sentence. The four-level enhancement for Taylor's role in the scheme was first recommended by the Probation Office in its PSR of July 7, 1997. In the objections he filed to that report, Taylor challenged the appropriateness of a four-level enhancement, arguing that he "should be given at most a three-level en-

hancement." PSR at 37. The difference between three and four levels was only a three-month increase in the guidelines range. *See* U.S.S.G. MANUAL ch. 5, pt. A; PSR at 20–21; 11/13/97 Tr. at 25–29. At the presentence hearing held on November 4, the prosecutor advised the court that if Taylor continued to contest the four-level enhancement, she would offer eleven witnesses to testify regarding his role in the offense. As Taylor conceded, that warning caused the defense to reevaluate its position, *see* 11/8/00 Tr. at 14, a logical step since such witnesses could have persuaded the court not only to reject Taylor's objection but also to sentence him at the top of the resulting guidelines range.

By the time the sentencing hearing itself commenced on November 13, Taylor and his counsel had agreed to rescind the objection to the four-level enhancement. At the beginning of the hearing, before the prosecutor could offer her witnesses in support of the "organizer or leader" enhancement, Moore withdrew his client's objection. *See* 11/13/97 Tr. at 3 ("[T]hat's no longer a contested issue. So there's not going to be an evidentiary hearing or a fight about that. I discussed that with Mr. Taylor."). Accordingly, when the court thereafter pronounced Taylor's sentence, it was indisputably within the sentencing range that Taylor and his counsel had anticipated from the outset of the hearing, and there was thus no reason for Moore to believe that Taylor was dissatisfied or would want to appeal.

Nor did Taylor say anything at the sentencing hearing to suggest that he was interested in an appeal, despite the several opportunities the court gave him to say whatever he wished. *See id.* at 22, 25, 32. Indeed, after the court pronounced the sentence and advised Taylor of his right to appeal, Taylor, without awaiting an invitation to speak, asked not about an appeal but rather whether he could "get an order forthwith" for transfer to a federal prison. *Id.* at 30. The court said that it would try "to accommodate Mr. Taylor's request." *Id.* at 31. And when the court asked whether there was "[a]nything else, Mr. Taylor," the defendant again did not respond with a question about his appeal rights, but rather by telling the judge that he had not intimidated any

witnesses. *Id.* at 32. To this, too, the court replied in a way that left Taylor satisfied, assuring him that allegations of obstruction had played no role in the sentence that the court had imposed. *Id.* Taylor responded with a "thank you." *Id.* As the court later noted in rejecting Taylor's § 2255 motion, the defendant "was not reticent during the course of the sentencing proceeding," and it was reasonable to expect that had he wanted to appeal he would have said so. 11/8/00 Tr. at 98.

Taylor argues that counsel should have realized that he wanted to appeal the § 3B1.1 determination because, prior to the pronouncement of the sentence, he had told the court that it was his co-defendant Stoddard, not he, who was the "mastermind" of the scheme. But in light of the fact that Taylor had withdrawn his objection to the § 3B1.1(a) enhancement just moments before, reasonable counsel would have understood that statement as Taylor's effort to persuade the court to sentence him at the lower end of the guidelines range, rather than as a challenge to the calculation of the range itself. That is particularly so because Taylor's remark came in response to the court's request for comments from the parties regarding "the appropriate sentence within [the] range." 11/13/97 Tr. at 19.

Finally, Taylor's appellate counsel contended at oral argument that there was no need for the defendant to demonstrate an interest in appealing, because the district court itself advised him that "Mr. Moore will file a notice of appeal for you." *See id.* at 30. That, counsel claims, misled Taylor into believing that an appeal would be filed automatically and that he therefore did not have to say anything to Moore. But this claim relies on a selective quotation of the court's advice regarding Taylor's right to file an appeal, the full recitation of which makes such confusion appear implausible:

> You *may* appeal this sentence and you have ten days within which to do so. *Mr. Moore will file a notice of*

> *appeal for you* and will either represent you on appeal or will provide you with the necessary papers so I can appoint another lawyer for you *if [you] want to appeal it*.

*Id.* (emphasis added). In short, the court advised Taylor that Moore would file an appeal for him *if* he wanted to appeal, not that Moore would file one automatically.

We therefore conclude that "this particular defendant" did not "reasonably demonstrat[e] to counsel that he was interested in appealing," *Flores-Ortega*, 528 U.S. at 480, and he is thus unable to satisfy the second part of the *Flores-Ortega* test.

### III

Like the Supreme Court, we believe "that the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal," and we exhort all defense counsel in this circuit to follow that practice. *Flores-Ortega*, 528 U.S. at 479. *Flores-Ortega* makes clear, however, that such consultation is not constitutionally required in all cases, and this case plainly is one of those in which there was no "constitutionally imposed duty to consult." *Id.* at 480. Accordingly, the judgment of the district court is

*Affirmed.*