**Paulino QUINTERO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. No. 2:01–CV–176.

Crim. No. 2:99–CR–116.

United States District Court,
N.D. Indiana,
Hammond Division.

March 30, 2004.

Paulino Quintero, California City, CA, Pro se.

Arlington J. Foley Sr., Merrillville, IN, for Petitioner.

Andrew B. Baker Jr., U.S. Attorney's Office—Hmd/IN, Hammond, IN, for Respondent.

### ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed by Petitioner on March 19, 2001. For the reasons set forth below, Petitioner's remaining claim in that motion—that his attorney was constitutionally ineffective for failing to file a notice of appeal—is **DENIED** and his section 2255 motion is **DISMISSED** **WITH PREJUDICE.** The Clerk is **ORDERED** to close the civil case.

### BACKGROUND

On August 19, 1999, a grand jury returned an indictment charging Petitioner and three co-defendants with several drug-related crimes. Petitioner was charged with conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C. section 846 (Count 1); distribution of cocaine, in violation of 21 U.S.C. section 841(a)(1) (Counts 5 and 6); and possession with the intent to distribute more than 500 grams of cocaine, in violation of 841(a)(1) (Count 7). Count 7 carried a mandatory minimum penalty of five years of imprisonment followed by four years of supervised release, and a maximum statutory penalty of 40 years of imprisonment followed by a life term of supervised release. The indictment also included a forfeiture allegation.

As a result of a plea agreement, on March 31, 2000, Petitioner entered a plea of guilty to Count 7 of the indictment. On June 23, 2000, Petitioner was sentenced to a term of 87 months of imprisonment, four years of supervised release, and a $100 special assessment. Thus, Petitioner received a term of imprisonment only two years and three months over the mandatory minimum, and he received the mandatory minimum term of supervised release. In exchange for his guilty plea, the Government requested and received leave of Court to dismiss Counts 1, 5, 6, and the forfeiture allegation against Petitioner. No notice of appeal was ever filed and no appeal was submitted to the Seventh Circuit.

Petitioner later initiated this action by filing his pro se section 2255 petition asking that his sentence be vacated because his attorney: (1) failed to file a notice of appeal; and (2) failed to argue, at the sentencing hearing, for a downward depar-

ture under the Sentencing Guidelines based on Petitioner's status as a deportable alien.

On March 4, 2003, the Court issued an order appointing Petitioner an attorney and granting him a hearing on his claim that his former attorney rendered constitutionally ineffective assistance by failing to file a notice of appeal. The March 4, 2003, order also denied Petitioner's claim that his former attorney was constitutionally ineffective for failing to urge a downward departure at sentencing. The Court held hearings on Petitioner's surviving claim on June 20 and 26, 2003. This order addresses that claim.

*DISCUSSION*

*Facts*

██ Petitioner's plea agreement contains a waiver of his right to pursue a direct appeal. Paragraph 9(i) of Petitioner's March 27, 2000, Petition to Enter a Plea of Guilty provides as follows:

> I am aware that my sentence will be determined in accordance with the United States Sentencing Guidelines. I am also aware that a sentence imposed under the Guidelines does not provide for parole. I agree that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth above in paragraph 9(c) of this plea agreement. With that understanding, I expressly waive my right to appeal my sentence on any ground, including any appeal right conferred by Title 18, United States Code, Section 3742 . . . [.]

During the March 31, 2000, change-of-plea hearing, the Court questioned Petitioner and a co-defendant regarding whether they were satisfied with the assistance of their attorneys, in Petitioner's case, Claudia Trafficante ("Attorney Trafficante"), and whether they understood their separate plea agreements and the waiver provisions in them:

Q:  Mr. Flores and Mr. Quintero, did each of you have an opportunity to have your Plea Agreements read to you through the interpreter, and I'm speaking of your individual Plea Agreements?

A:  [Petitioner] Yes.

\*      \*      \*      \*      \*      \*

Q:  Do you agree with the Plea Agreements?

A:  [Petitioner] Yes.

\*      \*      \*      \*      \*      \*

Q:  Any part of it you disagree with?

A:  [Petitioner] It's fine.

(Plea Hrg. Tr. at 19.)

\*      \*      \*      \*      \*      \*

Q:  With all of that in mind, Mr. Quintero, what you're doing now in this paragraph is agreeing to give up all of your rights to appeal, either in the manner in which you were found guilty or any penalties or sentence that you may get. Do you understand that?

A:  Yes.

Q:  And for all practical purposes, Mr. Quintero, that's all of your rights to appeal. You do keep one, that's incompeten[ce] of counsel. Do you understand that?

A:  Yes.

Q:  Do you understand that the government is not giving up any of their rights to an appeal?

A:  Yes.

Q:  Are you sure this is what you want to do?

A:  Yes, I'm sure.

Q:  Are you doing it knowingly and voluntarily?

A:  No.

Q:  You don't know what you're doing?

A: No, I do.

Q: Again, are you doing this knowingly and voluntarily?

A: Yes.

Q: Has anyone threatened you in any way to do this?

A: No.

Q: And are you asking me to approve it as part of your Plea Agreement?

A: Yes.

(Plea Hrg. Tr. at 53–54.)

After summarizing the role of the Sentencing Guidelines in determining Petitioner's precise sentence, the Court explained the interplay between the waiver in his plea agreement and the Court's latitude under the Sentencing Guidelines:

Q: Do you further understand that after it has been determined what Guidelines apply to a case, the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the Guidelines?

A: Yes.

Q: Do you recall we talked about that before; that's called a deviation?

A: Yes.

Q: Do you further understand that under some circumstances the government may have a right to appeal any sentence that I may impose, but that you have, for all practical purposes, as discussed with you earlier, waived all of your rights to an appeal?

A: Yes.

Q: Do you further understand that if I accept your plea of guilty and your Plea Agreement, and the sentencing is more severe than you expected, you will still be bound by your plea and will have no right to withdraw it?

A: Yes.

(Plea Hrg. Tr. at 63–64.)

Following preparation of the Pre-Sentence Investigation Report, the Court sentenced Petitioner on June 23, 2000. Petitioner's waiver of certain appellate rights came up in the final minutes of the sentencing hearing:

Q: Mr. Quintero, you have heard the judgment of this Court adjudicating you guilty and imposing sentence upon you. Normally, I would tell you that you have a right to appeal your sentence and conviction in this case, but you may recall during the change of plea you agreed to waive all of your rights to an appeal with very few exceptions. Do you recall that?

A: Yes, I remember.

Q: Ms. Trafficante, I remind you of your duty to perfect a timely appeal of this sentence should your client wish to do so. Furthermore, you're responsible for the continued representation of your client on appeal unless specifically relieved by the Court of Appeals upon a motion to withdraw for good cause.

Finally, all requests for appeal must be taken to the Court of Appeals, as this Court does not have the power to entertain such requests.

Ms. Trafficante, I would assume if your client wishes to appeal on the limited ground that remains, that you would bring it to the attention of the Court of Appeals inasmuch as your continued representation at that point would probably constitute a conflict. Do you understand?

A: [Attorney Trafficante] Yes, your Honor.

(Sent. Hrg. Tr. at 35–36.)

As indicated above, no notice of appeal was filed and no appeal was presented to the Seventh Circuit. In his section 2255

motion, Petitioner alleges that, despite his expressed desire to appeal, Attorney Trafficante did not file the required notice of appeal. Petitioner states, "Counsel [a]greed to file the appeal [before] the 10 days[,] but the movant never saw the counsel after the sentence."

At the hearings on his section 2255 motion, Petitioner offered new attacks on the validity of his guilty plea and sentence. Specifically, during the hearings, Petitioner alleged that: (1) he was nervous during the change-of-plea and sentencing hearings and did not realize he was waiving virtually all appellate rights by pleading guilty pursuant to the plea agreement; (2) there was an agreement, either in the plea agreement or elsewhere, for him to be sentenced to only 60 months; and (3) Attorney Trafficante provided constitutionally ineffective representation at the sentencing hearing by not objecting to the firearms enhancement Petitioner received for possessing a weapon during a controlled drug purchase.

Petitioner's new attacks on the validity of his guilty plea and sentence are improper or incredible for multiple reasons. First, they are time-barred. Petitioner did not raise these claims in his section 2255 motion, and the time for asserting such claims has passed. 28 U.S.C. § 2255, ¶ 6 (one-year limitations period, running from date conviction becomes final); *Grossi, et al. v. United States*, Nos. 97 C 2863, 90 CR 463, 97 C 2919, 1999 WL 439237, at *7–8 (N.D.Ill. June 28, 1999) (amendment to section 2255 motion permitted if received before government's response to original motion filed). Second, claim # 1 is contradicted by testimony elicited from Petitioner on direct examination at the June 20, 2003, hearing. Within the first two minutes of taking the stand that day, Petitioner stated that he fully understood the plea agreement before signing it. That agreement, of course, includes the waiver which Petitioner later testified he did not understand (due to his alleged nervousness) when the Court reviewed it with him during the change-of-plea hearing. Third, claim # 2 is directly contradicted by the record, including Petitioner's sworn testimony.[1] Specifically, the plea agreement and Petitioner's testimony at the change of plea hearing demonstrate there was no agreement for him to receive a 60-month sentence. Sworn statements made on the record are entitled to "great weight" and are to be credited over contrary, subsequent claims. *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999). Fourth, claims ## 2 & 3 are foreclosed by the Court's conclusion, in the March 4, 2003, Order, that Petitioner knowingly and voluntarily entered into the plea agreement. Fifth, as discussed later during the hearings on Petitioner's section 2255 motion, claim # 3 is contradicted by the sentencing hearing transcript showing that Attorney Trafficante *did* object to the firearms enhancement.[2] The Court will

1. As a courtesy to Petitioner at the June 20, 2003, hearing, the Court reviewed with him relevant portions of the change-of-plea hearing transcript. During that review, Petitioner acknowledged making numerous sworn statements at the change-of-plea hearing that directly contradict his new claims (i.e., that he did not know he was waiving virtually all appellate rights by pleading guilty, and that an agreement existed that assured he would not receive more than 60 months of imprisonment for pleading guilty). Petitioner's June 23, 2003, admissions, regarding his testimony at the change-of-plea hearing, are more reason for the Court to reject his new claims as flatly contradicted by his sworn testimony at the change-of-plea and sentencing hearings.

2. Even if Petitioner were to claim that, although Attorney Trafficante objected to the weapons enhancement, she did so inadequately, the Court would not consider the merits of that claim. As discussed in the Court's March 4, 2003, order (at pp. 18–19), such a claim is barred by the clause in Petitioner's plea agreement waiving his right to

not further address these untimely, contradicted, unsupported and factually incorrect claims.

With respect to issues that were properly before the Court at the June 2003 hearings, Petitioner testified as follows: (1) on the day he was sentenced and while he was still in the courtroom, he told Attorney Trafficante that he wanted to appeal, but did not tell her on what ground(s) he wished to appeal; (2) although the Court reminded him at the sentencing hearing that he had given up virtually all rights to an appeal, a few minutes after being so reminded he told Attorney Trafficante that he wanted to appeal, "to see what she would say"; (3) in response to his request for an appeal, Attorney Trafficante told him, "tomorrow I'll come see you" at the Metropolitan Correctional Center ("MCC") in Chicago; (4) if he had been able to file an appeal, he would have attacked the imposition of the firearms enhancement, because Attorney Trafficante "didn't help me well enough on that"; (5) not until four months after he was sentenced did he fist realize an appealable issue might exist regarding Attorney Trafficante's failure to seek the deportable-alien-based downward departure.

Attorney Trafficante testified to the following during the June 26, 2003, hearing: (1) never at any time before, during, or after the sentencing hearing did Petitioner ask her to file an appeal or notice of appeal; (2) she never told Petitioner she would visit him after the sentencing at the MCC in Chicago to discuss an appeal; (3) she never had any conversation with Petitioner regarding whether he wanted to appeal or should appeal; (4) she had no reason to believe Petitioner thought she would file a notice of appeal; (5) she never asked Petitioner, either before or after the

sentencing, whether he wanted to pursue an appeal based on ineffective assistance of counsel; (6) after the sentencing hearing, she never discussed with Petitioner his limited right to pursue an appeal because, during the negotiation of the plea agreement, she had discussed with Petitioner his right to pursue an ineffective assistance claim and she sent Petitioner a letter after the sentencing hearing instructing him, among other things, to contact her if he had any questions; (7) she reviewed the file after the sentencing hearing and concluded "there were no nonfrivolous issues" that could have been raised on appeal; and (8) if she had concluded that a nonfrivolous issue existed, she would have advised Petitioner of her conclusion.

During and after the June 2003 hearings, the Court carefully considered the credibility and demeanor of Petitioner and Attorney Trafficante, as well as the clarity of their memories regarding the events at issue. Their testimony is at odds on two key issues, including: (1) whether Petitioner asked Attorney Trafficante to file an appeal or notice of appeal; (2) whether Attorney Trafficante told Petitioner she would travel to the MCC in Chicago after the sentencing to discuss an appeal. Granted, both Petitioner and Attorney Trafficante arguably have their own motives to fabricate their testimony—Petitioner because he seeks relief under section 2255 and Attorney Trafficante because she wishes to avoid being found to have rendered constitutionally ineffective assistance of counsel. However, Attorney Trafficante has appeared before this Court countless times over the past several years, and the Court has sufficient experience with Attorney Trafficante's demeanor, mannerisms, and overall credibility to

pursue collateral relief with respect to his attorney's performance at the sentencing hearing.

assess her testimony in this matter as truthful.

The Court's experience with Petitioner's demeanor and mannerisms is admittedly less extensive, but is still sufficient to raise doubts about his credibility. Several parts of Petitioner's testimony give rise to questions regarding his veracity, his memory, or both. For example, although Petitioner testified at his change-of-plea hearing that no promises or predictions had been made to him regarding his eventual sentence, Petitioner's testimony at the June 2003 hearings contradicted that claim. In fact, Petitioner's testimony at the June 2003 hearings was internally inconsistent, as described above, with respect to whether he understood the plea agreement's provisions before the change-of-plea hearing. Also, at the June 2003 hearings, Petitioner did not accurately recall whether Attorney Trafficante objected to the firearms enhancement during the sentencing hearing. Finally, at the June 2003 hearings, Petitioner repeatedly testified that, if he been given a chance to appeal, the *only* issue he would have raised on appeal would have been the firearms enhancement. However, that claim is not raised *anywhere* in his section 2255 motion. Instead, the motion focuses on Attorney Trafficante's general failure to file a notice of appeal and her failure to seek a downward departure based on Petitioner's status as a deportable alien. The omission of any reference to the firearms enhancement in the section 2255 motion leaves the Court with the impression that Petitioner is engaged in revisionist history by claiming that his never-filed appeal would have disputed the firearms enhancement. Taken together, those inconsistencies and omissions cut into the thin fabric of Petitioner's story and give the Court further reason to doubt its accuracy.

Accordingly, after weighing the credibility and demeanor of both witnesses, and when forced to reconcile the conflicts between Petitioner's version of the events and Attorney Trafficante's version, the Court credits only the testimony of Attorney Trafficante. Even with respect to other aspects of Petitioner's testimony that do not directly contradict Attorney Trafficante's testimony, the Court remains skeptical.

Notably, during the June 2003 hearings, Petitioner's appointed counsel for the section 2255 hearing, Attorney Arlington Foley ("Attorney Foley"), candidly advised the Court that it had been "difficult" for him to find an appealable issue in Petitioner's case. In fact, Attorney Foley informed the Court that, if he had been called upon to pursue a direct appeal for Petitioner, he would have been forced to file an *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), brief stating that no nonfrivolous grounds for appeal existed.

*Analysis*

*The Waiver Did Not Eliminate Petitioner's Appellate Rights*

■ . A defendant's waiver of his right to pursue a direct appeal does not eliminate all appealable issues. First, and most fundamentally, such a waiver may always be attacked (even in the type of subsequent proceeding which it purports to waive) if the waiver: (1) was not knowingly and voluntarily made; or (2) was procured through defense counsel's constitutionally ineffective negotiations. *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir.2000) (citing *Jones v. United States,* 167 F.3d 1142 (7th Cir.1999)). Second, a waiver does not bar a defendant from pursuing an appeal arguing that the trial judge relied on impermissible facts (such as the defendant's race) in selecting a sentence. *United States v. Feichtinger,* 105 F.3d 1188, 1190 (7th Cir.1997). Third, a waiver does not prevent a defendant from seeking re-

dress if he was sentenced in excess of the statutory maximum for the crime committed. *Id.; Jones,* 167 F.3d at 1144. Far from being absolute, an appeal waiver in a plea agreement simply "reduces the scope of potentially appealable issues." *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

For Petitioner, this means his assent to the waiver provisions in paragraph 9(i) of his plea agreement did not completely eliminate his ability to pursue an appeal to the Seventh Circuit. Indeed, at the sentencing hearing, the Court advised Petitioner that he had waived his appellate rights but "with [a] very few exceptions." The Court also reminded Attorney Trafficante that if her "client wishe[d] to appeal on the limited ground that remain[ed]," she would need to notify the Seventh Circuit because her "continued representation . . . would probably constitute a conflict." Of course, the Court was alluding to the possibility that Petitioner might want to attack the plea agreement as the product of constitutionally ineffective negotiations by his attorney. Because appellate counsel can "hardly be expected to challenge on appeal [her] own ineffectiveness at [the] trial [stage]," such a claim would have required Attorney Trafficante to relinquish control of the appeal to another attorney. *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.1991). Plainly, Petitioner's plea agreement did not foreclose him from properly pursuing a *very limited* appeal to the Seventh Circuit. Thus, despite the plea agreement's waiver, the Court can consider whether Attorney Trafficante rendered constitutionally ineffective assistance by failing to file a notice of appeal for Petitioner.

*Standards for Assessing Counsel's Performance*

As with all allegations of constitutionally ineffective assistance of counsel, the analysis must begin with the Supreme Court's seminal case in this area, *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (analyzing ineffectiveness claim under 28 U.S.C. § 2254). The test for ineffectiveness claims is exacting. To establish such a claim, a defendant must show that his/her attorney's representation was deficient, and that the deficiency prejudiced the defendant. *Wiggins,* 123 S.Ct. at 2535. To establish deficient performance, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* This test is highly deferential to counsel, "presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir.1997) (citations omitted); *see also Wiggins,* 123 S.Ct. at 2536 (strategic choices are virtually unchallengeable) (citing *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052). Thus, when examining the performance prong of the *Strickland* test, a court must "indulg[e] a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Galowski v. Berge,* 78 F.3d 1176, 1180 (7th Cir.1996) (internal quotes omitted). Then, to establish the prejudice component of the *Strickland* test, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wiggins,* 123 S.Ct. at 2542. Such a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

▮ When viewed in the context of counsel's failure to file a notice of appeal, the *Strickland* framework applies as follows. First, because the Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a

manner that is professionally unreasonable," the threshold inquiry is whether the attorney ignored his/her client's wishes. *Flores–Ortega*, 528 U.S. at 477, 120 S.Ct. 1029. If the client instructed the lawyer to file a notice of appeal and the lawyer failed to do so, both prongs of the *Strickland* test are satisfied and the client is entitled to a fresh appeal. *Id.* (citing *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969)). That is because: (1) a lawyer's failure to file a requested appeal as is professionally unreasonable; and (2) the client's instruction to file the appeal objectively indicates an intent to appeal, which conclusively satisfies *Strickland's* prejudice prong. *Id.* at 477, 120 S.Ct. 1029 (failure to file is professionally unreasonable); 485 (instruction to appeal demonstrates prejudice component) (citing *Rodriquez*, 395 U.S. at 328, 89 S.Ct. 1715). Of course, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.*

■ Second, when a client neither instructs counsel to file an appeal nor asks that an appeal not be taken, the inquiry becomes whether counsel consulted with the client regarding "the advantages and disadvantages of taking an appeal" and made a "reasonable effort to discover the [client's] wishes." *Id.* at 478, 120 S.Ct. 1029. If the attorney consulted with the client regarding a possible appeal, the attorney can only be deemed professionally deficient if he/she then fails to follow the client's express instructions regarding the possible appeal. *Id.*

Third, if counsel did not consult with the client regarding a possible appeal, the question becomes whether the attorney's failure to consult constituted deficient performance. *Id.* at 479, 120 S.Ct. 1029. In other words, did counsel have a duty to consult with the client regarding an appeal? The Supreme Court has explained that:

> ... counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all of the information counsel knew or should have known. [citation omitted] Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480, 120 S.Ct. 1029. In essence, this step includes objective and subjective components: (a) whether a rational defendant in the same position would want to appeal; and (b) whether the defendant at issue reasonably indicated to counsel that he/she wanted an appeal.

Fourth, if counsel had a duty to consult regarding a possible appeal but failed to do so, the issue becomes whether "there is a reasonable probability that, but for coun-

sel's deficient failure to consult with [the client] about an appeal, [the client] would have timely appealed." *Id.* at 484, 120 S.Ct. 1029. To make this showing, a defendant need not specify the points he/she would raise if his/her appeal right were reinstated, but evidence that there were nonfrivolous grounds for an appeal or that the defendant promptly expressed a desire to appeal "will often be highly relevant" in assessing whether the defendant would have timely appealed if he/she had received reasonable advice from counsel about a possible appeal. *Id.* at 485–86, 120 S.Ct. 1029. However, if a defendant cannot demonstrate that, but for counsel's deficient performance, he/she would have appealed, counsel's deficient performance has not deprived the defendant of anything, and he/she is not entitled to relief. *Id.* at 484, 120 S.Ct. 1029.

### *Petitioner's Claim Must Be Denied*

The first step is to determine whether Attorney Trafficante ignored Petitioner's specific instruction to file a notice of appeal. The Court has already concluded that Petitioner's testimony that he asked Attorney Trafficante to file an appeal is not credible. Instead, the Court accepts Attorney Trafficante's testimony that at no time before, during, or after the sentencing hearing did Petitioner ask her to file an appeal or notice of appeal. However, because there is no testimony that Petitioner instructed his lawyer *not* to file an appeal, the Court's inquiry continues.

The next inquiry is whether Attorney Trafficante consulted with Petitioner regarding the advantages and disadvantages of appealing, and whether she made a reasonable effort to discover Petitioner's wishes on the issue. Attorney Trafficante testified that no such discussion took place,

so the ineffectiveness inquiry moves to the next step.

Now the question becomes: Did Attorney Trafficante have a duty to consult with Petitioner regarding an appeal? To answer this question, the Court must assess the objective and subjective components by asking whether a rational defendant in Petitioner's position would have wanted to appeal, and whether Petitioner reasonably demonstrated to Attorney Trafficante an interest in appealing.

It is very difficult to conclude that a rational defendant in Petitioner's position would have wanted to appeal. First, a "highly relevant factor" to consider is that Petitioner pled guilty. *Flores–Ortega*, 528 U.S. at 480, 120 S.Ct. 1029. In fact, he pled to *just one* of the five counts (including the forfeiture allegation) against him. By itself, the guilty plea indicates Petitioner may have been seeking an end to the judicial proceedings, but when viewed in conjunction with the plea agreement's call for dismissal of the other four counts, Petitioner's plea seems to be a very good deal—hardly the kind of deal that a rational defendant would jeopardize by appealing. Second, although he faced a term of imprisonment of between 5 and forty years under Count 7, Petitioner received only 7 years and three months. Especially because Petitioner knew that under the Sentencing Guidelines his sentence could have been much higher, it is relatively easy to conclude that Petitioner received the sentence he bargained for in the plea agreement.[3] Third, Petitioner had waived virtually all of his appellate rights and had been repeatedly reminded of that broad waiver during the change-of-plea and sentencing hearings. Clearly, Petitioner knew that

---

**3.** The Court has already concluded it cannot credit Petitioner's claim that he was assured he would not receive more than 60 months of imprisonment. That claim is contradicted by

his testimony at the change-of-plea hearing and is was also flatly contradicted by Attorney Trafficante at the June 2003 hearings.

any appeal he might wish to pursue would be severely limited—if not completely foreclosed—by the appellate waiver he had knowingly and voluntarily accepted. Fourth, both of Petitioner's lawyers (Attorney Trafficante and Attorney Foley) separately concluded that, following his sentencing, Petitioner did *not* have any nonfrivolous grounds for appeal. *See United States v. Taylor*, 339 F.3d 973, 980 (D.C.Cir.2003) (applying *Flores–Ortega* and noting failure of counsel to find any meritorious grounds for appeal). The absence of any viable appellate issue is another reason to believe a rational defendant in Petitioner's place would not have sought an appeal.

In light of those factors, the Court concludes that a rational defendant in Petitioner's position would *not* have wanted to appeal.

Next, the Court must consider the subjective question of whether Petitioner reasonably demonstrated to Attorney Trafficante an interest in appealing. The Court has already concluded it cannot credit Petitioner's testimony that he asked Attorney Trafficante to file an appeal at the conclusion of the sentencing hearing. Nor can the Court credit Petitioner's claim that Attorney Trafficante agreed to travel to the MCC to discuss an appeal with Petitioner. Instead, the Court accepts Attorney Trafficante's testimony that Petitioner never asked her to file an appeal and that she never agreed to meet with Petitioner to discuss an appeal. The Court also accepts Attorney Trafficante's testimony that she had no reason to believe Petitioner thought she would file a notice of appeal. In other words, Attorney Trafficante was not under the impression that Petitioner expected her to pursue an appeal. Additionally, although the letter Attorney Trafficante sent to Petitioner following his sentencing instructed him to contact her if he had any questions, there was no testimony that Petitioner ever attempted further correspondence or communication with her. In sum, there is simply no credible evidence that Petitioner signaled to Attorney Trafficante (or anyone else) a desire to appeal.

Therefore, the Court cannot conclude that Petitioner either "reasonably" or "sufficiently" demonstrated to his lawyer a desire to appeal. *Flores–Ortega*, 528 U.S. at 480, 120 S.Ct. 1029.

The Court's conclusions on the objective and subjective components (i.e., that no rational defendant in Petitioner's position would have wanted to appeal, and that Petitioner did not reasonably/sufficiently demonstrate to Attorney Trafficante a desire to appeal) require the Court to conclude that Attorney Trafficante did not have a duty to consult with Petitioner regarding the advantages and disadvantages of appealing. In the absence of such a duty, Attorney Trafficante's failure to consult with Petitioner regarding an appeal cannot be characterized as professionally deficient, and Petitioner cannot satisfy *Strickland's* deficient-performance prong. Accordingly, Petitioner's claim that Attorney Trafficante rendered constitutionally ineffective assistance must fail. The Court need not consider whether Petitioner would have timely appealed if Attorney Trafficante had consulted with him regarding the benefits and drawbacks of an appeal.

Significantly, the facts of this case fit closely with a hypothetical situation discussed by the Supreme Court in *Flores–Ortega:*

> For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as

expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. *Under these circumstances, it would be difficult to say that counsel is 'professionally unreasonable,'* [citation omitted] *as a constitutional matter, in not consulting with such a defendant regarding an appeal.*

*Id.* at 479, 120 S.Ct. 1029 (emphasis added). This guidance from the Supreme Court bolster's the Court's conclusion that Attorney Trafficante acted reasonably by not consulting with Petitioner regarding an appeal.

### *Following Sentencing, Counsel Should Consult Regarding an Appeal*

The Court's conclusion that Attorney Trafficante did not have a duty to consult with her client regarding the advantages and disadvantages of pursuing an appeal should not be interpreted as an indication that counsel can avoid discussing possible appeals with their clients any time the client has pled guilty and waived nearly all of his/her appellate rights. Consultation about a possible appeal is not constitutionally required in all cases, but "the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal," and the Court **strongly** encourages all defense counsel appearing before the Court to follow that practice. *Flores–Ortega,* 528 U.S. at 479, 120 S.Ct. 1029; *Taylor,* 339 F.3d at 982. Of course, because a defendant's feelings regarding an appeal will likely remain unsettled until after the sentencing hearing, counsel should have that conversation (perhaps not for the first time) after their client has been sentenced. Lest they find themselves before the Court as a witness in a section 2255 hearing like the one in this case, defense counsel would be wise to memorialize these consultations and their clients' wishes regarding appeals.

### CONCLUSION

For the reasons set forth above, Petitioner's claim that his attorney was constitutionally ineffective for failing to file a notice of appeal is **DENIED** and his section 2255 motion is **DISMISSED WITH PREJUDICE**. The Clerk is **ORDERED** to close the civil case.