2025 IL App (2d) 240359-U
No. 2-24-0359
Order filed July 14, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-860 |
| TREVON MORRIS, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court properly rejected defendant's postconviction claim that his attorney was ineffective for failing to file a notice of appeal from defendant's conviction entered upon an open plea of guilty. First, we uphold the court's credibility finding that defendant never asked counsel to file an appeal. Second, we hold that counsel had no duty to consult with defendant about an appeal where defendant has identified no nonfrivolous basis for an appeal.

¶ 2    Defendant, Trevon Morris, filed an amended petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) for relief from his conviction entered upon his open plea of guilty to a single count of aggravated driving under the influence of alcohol or other drugs (625 ILCS 5/11-501(a)(7), (d)(1)(F) (West 2020)). After an evidentiary hearing, the trial court

denied the amended petition. Defendant appeals. We affirm because defendant did not prove, by a preponderance of the evidence, that his attorney denied him the effective assistance of counsel by failing to file a notice of appeal from his conviction entered upon the guilty plea.

¶ 3                                    I. BACKGROUND

¶ 4       Defendant's conviction arose from his nonnegotiated guilty plea on October 20, 2022. Before defendant entered his plea, the trial court advised him that unless "extraordinary circumstances" warranted probation, he faced a minimum sentence of 6 years' imprisonment and a maximum sentence of 28 years' imprisonment and that, upon release, he would be required to serve a term of mandatory supervised release. Defendant acknowledged that he understood. He also acknowledged that he understood that probation was an available sentence if the court found extraordinary circumstances, and he confirmed that no one had promised him anything to induce him to plead guilty.

¶ 5       As the factual basis for the plea, the prosecutor stated that, if the matter proceeded to trial, the State would present evidence that on or about April 20, 2021, a vehicle in which Dallas Colburn and Nathaniel Madison were backseat passengers was struck from behind while turning left from Illinois Route 31 into the entrance to Judson University. Colburn and Madison were ejected from the vehicle and died at the scene. After the collision, others in the vehicle observed defendant's vehicle up the road. It had significant damage. Defendant admitted at the scene that he was driving when the collision occurred. Information from the airbag control module in defendant's vehicle showed that the vehicle had been traveling at 91.1 miles per hour at the time of the collision and that defendant never applied the brakes. A sample of defendant's blood showed the presence of 15 nanograms per milliliter of Delta-9-tetrahydrocannabinol, which was three times the legal limit (see *id.* § 11-501.2(a)(6)).

¶ 6     Defendant's sentencing hearing was held on December 9 and 12, 2022. On the latter date, the trial court sentenced defendant to a 12-year prison term to be served at 85%. Defendant did not file a postplea motion or a direct appeal.

¶ 7     On March 22, 2023, defendant filed a *pro se* postconviction petition claiming that he did not receive the effective assistance of counsel from plea counsel. He alleged that counsel (1) did not review discovery with him; (2) did not file an appeal, despite defendant's wishes; (3) "stopped returning calls and mail, all communication with [defendant] ever since [he had] been incarcerated"; and (4) "presented to [*sic*] the '[b]lind plea' as probation at the minimum and 6 years at 85% at the maximum." On May 9, 2023, the trial court appointed counsel for defendant. On January 5, 2024, postconviction counsel filed an amended postconviction petition, which incorporated by reference the allegations of defendant's *pro se* petition. The amended petition contained no new claims or allegations of plea counsel's alleged ineffectiveness after defendant entered his plea. Counsel subsequently filed a second amended postconviction petition, which included the allegation that "immediately after sentencing [defendant] told [plea] counsel that he wanted to file an appeal." The State moved to dismiss the second amended petition. The trial court denied the motion and set the matter for an evidentiary hearing.

¶ 8     At the hearing, defendant testified that plea counsel brought him a "blind plea deal" under which he might be sentenced to probation if he could establish "extraordinary circumstances." Otherwise, his sentence would be "6 years at 85 at the max." Defendant did not realize that a blind plea entailed no agreement as to the sentence he would receive. Before entering his plea, counsel told him that the trial court would conduct a conference under Illinois Supreme Court Rule 402 (eff. July 1, 2012) and that defendant would not be permitted to attend. After the conference, counsel told defendant that "the State [did not] agree with the judge's decision and we were going

to have a sentencing hearing." Defendant testified that he was shocked when the court sentenced him to a 12-year prison term. He did not know the court could impose a prison sentence of over 6 years, served at 85%. Defendant acknowledged that, during his arraignment, he was told that his sentence could exceed six years, but he claimed that counsel told him that that was the case only for an extended term. Counsel told defendant that he was not eligible for an extended term, because he did not have a criminal record.

¶ 9 Defendant further testified that, after the trial court pronounced sentence, defendant orally told counsel that he wanted to file an appeal. He also wrote that request on a notepad. After sentencing, defendant spent nine days in the Kane County Jail before being transferred to the Stateville Correctional Center (Stateville). While in jail, defendant wrote a letter to counsel indicating that he wanted counsel to file an appeal and visit him in jail. Once he was transferred to Stateville, defendant wrote another letter to counsel. Defendant received no responses to his letters. He also had his family try to contact counsel.

¶ 10 Plea counsel testified for the State that he recalled that defendant was advised during his arraignment that he faced a prison sentence ranging from 6 to 28 years. Counsel denied that he subsequently told defendant that, because he was not eligible for an extended term, he would not receive a prison term exceeding six years. At the Rule 402 conference, the State suggested a sentence of 26 years, but the trial court recommended 12 years. Counsel advised defendant of the court's recommendation. Counsel and defendant decided that he would enter a blind plea. Before defendant entered his plea, counsel reminded him that he faced a prison term of 6 to 28 years. Counsel denied that defendant expressed shock or surprise after the court pronounced sentence. Counsel's testimony continued:

"Q. At any point in time [on the date of sentencing] after the judge sentenced [defendant] to 12 years in the Department of Corrections, did the defendant say to you here in open court that he wanted to appeal?

A. No, not that I recall at all.

Q. When you say you don't recall, you would recall something like that, *** because that would be important?

A. I would hope. I don't recall that at all.

Q. Did he ever tell you he wanted to file a motion to reconsider [his] sentence?

A. No.

Q. Did he ever tell you that he wanted *** to file a motion to withdraw his guilty plea?

A. No."

¶ 11     Plea counsel also denied that he received any phone messages from defendant asking him to file an appeal. Counsel added, "The only call I got was I think from a family member, and it was to discuss the money." Asked if he ever received letters from defendant indicating a desire to appeal, counsel responded, "I don't recall. I don't think so. I don't recall." Counsel added that, based on his 30 years in practice, if he had received such a letter, he would have "contacted [defendant] or his family or filed something to stop the clock." Counsel testified that he did not take any of those steps.

¶ 12     In denying the amended petition, the trial court explained that it found plea counsel's account of events credible and found defendant's account not credible. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14     Defendant argues on appeal that the trial court erred in finding that he did not ask plea counsel to file a notice of appeal. According to defendant, counsel's failure to file a notice of appeal after defendant asked counsel to do so violated his right to the effective assistance of counsel. Defendant alternatively argues that, even if he did not specifically request that counsel file a notice of appeal, counsel's obligation to provide effective assistance required counsel to consult with defendant about his right to appeal.

¶ 15     Before addressing defendant's arguments, it is useful to review the principles governing proceedings under the Act. As we have observed:

> "The Act allows a criminal defendant to assert in a petition that 'in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.' [Citation.] The Act provides a three-stage mechanism for a defendant to advance such a claim. [Citation.] At the first stage, the trial court independently reviews the petition and determines whether to dismiss it as frivolous or patently without merit. [Citation.] If the petition is not summarily dismissed, it advances to the second stage, where the court may appoint an indigent defendant counsel and the State may either answer or move to dismiss the petition. [Citations.] If the petition is not dismissed, it advances to a third-stage evidentiary hearing." *People v. Marcus*, 2023 IL App (2d) 220096, ¶ 57.

"[A] defendant's burden at the postconviction hearing is to establish his or her claim by a preponderance of the evidence." *People v. Green-Hosey*, 2025 IL App (2d) 240284, ¶ 40. Where a third-stage hearing involves determinations of fact and credibility, the postconviction court's decision will not be reversed unless manifestly erroneous. *Id.* ¶ 41.

¶ 16    At issue here is whether the trial court erred in rejecting defendant's claim that plea counsel's failure to file a notice of appeal violated his constitutional right to the effective assistance of counsel. Ineffective-assistance-of-counsel claims are evaluated under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

¶ 17    The United States Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In *Flores-Ortega*, the Court recognized that, even absent specific instructions to file a notice of appeal, an attorney must consult with the defendant about whether to file a notice of appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. The Court elaborated:

"Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine

whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.* When the circumstances dictate that counsel consult with the defendant, but counsel fails to do so, the defendant satisfies *Strickland*'s prejudice prong by showing that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. In such cases, because counsel's deficient performance deprived the defendant of the opportunity to pursue an appeal, the adversarial process is presumptively unreliable, and it is unnecessary to establish a reasonable probability that an appeal would have succeeded. *Id.* at 483.

¶ 18 Mindful of these principles, we consider whether the trial court erred in denying defendant's amended postconviction petition. First, we conclude that the court's factual determination that defendant did not ask plea counsel to file a notice of appeal was not manifestly erroneous. According to defendant, counsel's testimony was not credible and the trial court erred by relying on it. Defendant's claim that counsel's testimony was not credible is based on defendant's characterization of portions of counsel's testimony as "equivocal." According to defendant, "[counsel] never clearly stated 'No,' to any of the questions about whether [defendant] expressed some desire to appeal. Rather, he replied with variations of 'I don't recall,' and spoke about filings he could have made." Defendant's description is misleading. When counsel was asked whether defendant asked him in open court to file an appeal, counsel replied, "No, not that I recall at all." This statement may reflect a lack of absolute certainty, but it still projects a reasonable degree of confidence on counsel's part that defendant did not request that he file an appeal.

¶ 19    We stress that it was defendant's burden to establish counsel's ineffectiveness. Thus, defendant's credibility is at issue as well as counsel's. Even if counsel's testimony on certain points was equivocal, it does not follow that the trial court was obligated to credit defendant's testimony. In this respect, conflicting testimony on other points is significant. Counsel expressed no doubt when he testified (contrary to defendant's testimony) that he advised defendant that he faced a prison sentence ranging from 6 to 28 years, and that defendant was not shocked when he received a 12-year prison term. The court was entitled to conclude that defendant fabricated his testimony on these points and that, therefore, his testimony as a whole was not credible.

¶ 20    We further conclude that plea counsel was under no obligation to consult with defendant on the subject of pursuing an appeal. As noted, the question hinges on whether "there is reason to think *** that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)[.]" *Flores-Ortega*, 528 U.S. at 480. However, defendant's argument that counsel should have consulted with him is based largely on disappointed expectations that he would receive probation or a shorter sentence. Although defendant claimed he entered his plea without properly understanding the possible sentences and that he was under the impression that extraordinary circumstances guaranteed him probation or the minimum prison sentence, the trial court fully and accurately explained the sentencing possibilities. Defendant confirmed that he understood, and he further assured the court that no promises had been made to induce him to plead guilty. In this respect, this case is essentially identical to *People v. Torres*, 228 Ill. 2d 382 (2008). In *Torres*, the court explained:

"The crux of defendant's postconviction petition alleged that defendant did not understand the consequences of entering a blind plea of guilty and his counsel had promised him that he would receive the minimum sentence of 20 years' imprisonment if he pled guilty.

Defendant has now abandoned this claim and does not argue it in his brief before this court as a nonfrivolous ground for appeal. This is probably because the claim is belied by the record of the guilty-plea proceeding and is therefore frivolous and patently without merit.

***

[D]efendant *** was asked by the trial court at the plea hearing whether any promises had been made to cause him to enter his plea of guilty, and defendant responded, 'No.' The record also shows that defendant was repeatedly admonished by the trial court that the maximum sentence that it might impose could be as high as 60 years. Defendant always indicated that he understood this when asked. Thus, defendant's own words refute his postconviction allegations." *Id.* at 396-97.

¶ 21 Although defendant argues that he had no reason *not* to appeal, he has identified no potentially meritorious basis for a motion to withdraw his plea or reconsider his sentence, let alone for an appeal. We are unwilling to impute to a rational defendant a desire to pursue a hopeless appeal simply because he or she has nothing to lose by doing so. Under the circumstances, plea counsel had no obligation to consult with defendant about appealing his conviction or sentence. Indeed, to the extent that defendant claims that he did not understand the parameters of his possible sentence, that allegation is positively rebutted by the record and dismissal would have been warranted. *People v. Knapp*, 2020 IL 124992, ¶ 50 (citing *People v. Allen*, 2015 IL 113135, ¶ 25) (summary dismissal is warranted where the record positively rebuts a postconviction petition's allegations). Defendant was not entitled to a hearing on that portion of his claim.

¶ 22                                    III. CONCLUSION

¶ 23 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 24 Affirmed.

¶ 25    JUSTICE JORGENSEN, specially concurring:

¶ 26    While I agree with the ultimate outcome and limited credibility analysis here, I write separately to distinguish two points.

¶ 27    First, in my view, this case was properly resolved by the circuit court's denial of defendant's petition based on the credibility findings made after the third-stage hearing.

¶ 28    The question we are called to answer here is whether defense counsel was ineffective based on any of the breaches raised in defendant's amended post-conviction petition. Specifically, defendant alleged that (1) counsel failed to file a notice of appeal after defendant repeatedly asked for one to be filed and (2) counsel misled defendant about his sentencing parameters. He also implicitly raised the argument that counsel failed to consult with him about whether to file an appeal. To resolve these claims, the circuit court heard testimony from defendant and his defense counsel at the third-stage hearing. The court found defendant's testimony not credible and his counsel's testimony credible. I find no fault with the circuit court's findings. The denial of defendant's post-conviction petition is squarely based on the finding that the defendant's allegations were not credible, and, without credible testimony to support his claims of ineffective assistance of counsel, his petition fails. I agree with the majority, to the extent they rely on these findings, and would, thus, affirm the trial court's denial of defendant's post conviction petition on that basis.

¶ 29    Regarding defendant's argument, that his counsel had a duty to consult with him, I believe that the factors enumerated in *Flores-Ortega*, 528 U.S. at 480-81, should be our guidepost. See also *Torres*, 228 Ill. 2d at 401-03. There, the United States Supreme Court listed factors to consider when determining whether counsel has a constitutionally imposed duty to consult with defendant about an appeal: (1) whether defendant has non-frivolous grounds for appeal; (2) whether the case

follows a trial or guilty plea because "a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings"; (3) whether defendant received the sentence he bargained for as a part of the plea deal; and (4) whether defendant waived his appeal rights.

¶ 30    Of importance here, defendant plead guilty without an agreement, but with his attorney's representation of the court's recommendation from the 402 conference. The court had admonished defendant of his potential sentencing range during arraignment, and again at the time he pleaded guilty. Defendant indicated that he understood the potential sentencing range before pleading guilty and he received a sentence that was within the applicable sentencing range. Yet, at the third-stage hearing, defendant testified that he did not know entering a blind plea entailed no agreement as to his potential sentence, and that based on his attorney's representations, he believed his maximum sentence would be six years' imprisonment served at 85%. This claim is rebutted by the record—the court admonished defendant during guilty-plea proceedings that he was entering a plea without an agreement as to sentencing and without any promises made to him. Critically, at the third-stage hearing, the court found defendant's testimony that he was misled about the plea deal, misinformed of his potential sentencing range, and that he requested counsel to file an appeal, to be *not* credible. On the other hand, the circuit court found credible the testimony of defense counsel, that defendant was told the appropriate sentencing range, told the recommended sentence discussed at the 402 conference, and did not indicate any interest in filing an appeal.

¶ 31    Considering the weight of the *Flores-Ortega* factors and based on the court's rational credibility findings, by pleading guilty, defendant sought finality to his case, and, as in his statement in allocution, he was pleading guilty to accept the consequences of his actions. He testified to no credible nonfrivolous sentencing issues to appeal and received the sentence he

bargained for, as his sentence conformed to the admonished sentencing range and counsel's representations from the 402 conference. Thus, I conclude that this defendant has not established any ground that would have given his counsel a reason to think he would have wanted to appeal his sentence.

¶ 32    Secondly, I write separately to emphasize the cautionary final paragraph of *Torres*, "Finally, we believe that the 'better practice' is for counsel to consult with his client about the possibility of an appeal following the imposition of a sentence imposed upon a plea of guilty, and we exhort all defense counsel practicing in our state courts to follow this practice." *Torres*, 228 Ill. 2d at 401-03 (citing *Flores-Ortega*, 528 U.S. at 479). I agree with this caveat and urge counsel to consult with his or her client regarding an appeal.

¶ 33    Overall, I agree with the majority's outcome here that this case is one in which there was no constitutionally mandated duty to consult with defendant.