NOTICE

Decision filed 01/23/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210312-U

NO. 5-21-0312

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 11-CF-287 |
| | ) | |
| MARY R. ZUMWALT-JOPHLIN, | ) | Honorable |
| | ) | Thomas J. Tedeschi, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant failed to state the gist of a constitutional claim in the first stage of postconviction proceedings, where the principles of *res judicata* applied and postplea counsel's failure to present inconsistencies between laboratory reports and the autopsy report did not prejudice defendant, and thus, did not amount to ineffective assistance of counsel.

¶ 2    Pursuant to a 2015 negotiated plea, defendant, Mary R. Zumwalt-Jophlin, was convicted of concealment of a homicidal death (720 ILCS 5/9-3.4(a) (West 2010)), aggravated battery of a child (*id.* § 12-4.3(a)), and involuntary manslaughter (*id.* § 9-3(a)) and sentenced to 35 years in prison. On direct appeal, we affirmed the circuit court's order denying defendant's motion to withdraw her guilty plea on grounds of ineffective assistance of counsel. *People v. Zumwalt-Jophlin*, 2020 IL App (5th) 160317-U. Defendant subsequently filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*

1

(West 2020)), which the circuit court summarily dismissed at the first stage as frivolous and patently without merit. Defendant appeals, arguing the court's dismissal was erroneous, because her petition stated the gist of a meritorious constitutional claim. We affirm.

¶ 3                                    I. Background

¶ 4       This court's prior order contains a detailed recitation of the facts. *Zumwalt-Jophlin*, 2020 IL App (5th) 160317-U. We repeat only those facts pertinent to the issues in this postconviction petition.

¶ 5       Defendant's convictions stemmed from the drowning of her eight-year-old daughter, Alexus Smothers, on July 19, 2011. On August 17, 2015, the circuit court held a plea hearing, where defendant entered into a negotiated plea agreement. Defendant pled guilty to the offenses of concealment of a homicidal death, aggravated battery of a child, and involuntary manslaughter. In return, the State dismissed the remaining charges of obstructing justice (720 ILCS 5/31-4(a) (West 2010)) and first degree murder (*id.* § 9-1(a)(2)). The parties also agreed to concurrent 25-year and 14-year sentences for the convictions of aggravated battery of a child and involuntary manslaughter, respectively, and to a consecutive 10-year sentence on the conviction of concealment of a homicidal death.

¶ 6       At the request of the circuit court, the State offered a factual basis for defendant's guilty plea.[1] On July 19, 2011, at approximately 2:13 a.m., defendant called 9-1-1 to report her daughter, Alexus, missing. Two police officers responded to the call. Upon arriving to defendant's home, defendant told the officers that she woke up to find Alexus missing. The officers suggested defendant search the interior of her home, while the officers searched the area around the home.

---

[1]The factual background contains the State's factual basis provided to the circuit court at defendant's plea hearing, as well as relevant details this court included after a review of the two video statements contained the record on appeal.

During the officers' search of the backyard, they found defendant's behavior odd as she watched them from a window with the interior lights of the home turned off. Shortly thereafter, one of the officers discovered Alexus's dead body in a crawl space in the basement of defendant's home. Alexus's body was lying on a dirt floor, concealed behind a wall near a sump pump. Defendant was taken to the police department.

¶ 7    Several hours after Alexus's body was discovered, defendant agreed to submit to an interview, which was documented in two recorded video statements. The two video recordings demonstrated that defendant initially claimed that other individuals, including her ex-boyfriend, Jason Smith, were responsible for Alexus's death. Police discredited defendant's version of events when they informed her that Smith was arrested and spent the night in jail on July 19, 2011.

¶ 8    Defendant later indicated that Alexus was in the bathtub on the evening of July 19, 2011, and that Alexus sustained a "bump" on her head. The State intended to introduce evidence to demonstrate that "Alexus was injured in th[e] bathtub from being struck in the head by [defendant]." Defendant also admitted that she placed Alexus on the floor beside the bathtub but did not provide adequate lifesaving measures to remove the water from Alexus's lungs, even though defendant recognized Alexus was gasping for air. Defendant then moved Alexus's body to her bedroom, placing Alexus on her bed. Shortly thereafter, defendant put underwear on Alexus before she carried Alexus's dead body to the basement to conceal her body in a crawl space. The State intended to call Dr. J. Scott Denton, a forensic pathologist, who would testify that, although Alexus suffered a recent injury to her head that caused great bodily harm, she ultimately died of a brain injury due to oxygen deprivation from drowning in the bathtub. The court accepted defendant's negotiated plea and imposed the agreed-upon sentences of 35 years in prison.

¶ 9    On September 16, 2015, defendant filed a timely *pro se* petition to withdraw guilty plea and vacate sentence. In support of her motion, defendant stated the following:

> "There is no factual basis to support plea. There is DNA to prove that and that DNA evidence was not presented at any time. Plus there was a statement made that discredits (cast doubt to) someones [*sic*] alibi and that was never presented either. Plus neighbor made statement where he/she would have been a pertinent witness."

¶ 10    On March 18, 2016, defendant, represented by counsel, filed an amended motion to withdraw guilty plea and vacate sentence. Plea counsel also filed a Rule 604(d) certificate (Ill. S. Ct. R. 604(d) (eff. Mar. 8, 2016)). Defendant alleged that she felt she "had no other choice" but to enter into a plea agreement, and that her guilty plea was not knowingly and voluntarily entered due to her "highly emotional" condition. Defendant also argued that the circuit court failed to inform her of the sentencing range for the dismissed charges at the time of her plea.

¶ 11    On June 23, 2016, prior to the start of the hearing on defendant's amended motion to withdraw guilty plea and vacate sentence, plea counsel filed a second amended petition that was "substantially identical" to the March 18, 2016, filing. Following a hearing that day, the circuit court denied defendant's motion to withdraw guilty plea. In dismissing defendant's motion, the court reasoned that the record revealed defendant understood the proceedings before her and that she was willing to continue with the negotiated plea agreement. Defendant filed a timely notice of appeal.

¶ 12    On direct appeal, we affirmed the circuit court's order denying defendant's motion to withdraw guilty plea on grounds of ineffective assistance of counsel. *Zumwalt-Jophlin*, 2020 IL App (5th) 160317-U. Specifically, defendant claimed that certain evidence, including DNA evidence, a statement that would discredit a witness's alibi, and a statement by defendant's

4

unidentified neighbor indicating the neighbor was a pertinent witness, would cast doubt on her guilt. *Id.* ¶ 33. In affirming the circuit court's denial, this court determined that defendant failed to demonstrate that postplea counsel's representation was deficient, where the record demonstrated postplea counsel filed a facially valid Rule 604(d) certificate, and defendant failed to point to any evidence in the record to support her claim of ineffectiveness in the preparation and presentation of the motion to withdraw guilty plea. *Id.* ¶¶ 35-36.

¶ 13 Defendant subsequently filed a petition for rehearing, which this court denied on May 20, 2020. Defendant then petitioned for leave to appeal to the Illinois Supreme Court, which the court denied. *People v. Zumwalt-Jophlin*, No. 126191, 154 N.E.3d 797 (Ill. Sept. 30, 2020).

¶ 14 On July 26, 2021, defendant filed an 89-page *pro se* postconviction petition, pursuant to section 122-1 of the Act (725 ILCS 5/122-1 (West 2020)), claiming "actual innocence backed by newly discovered evidence." Relevant to this appeal, defendant argued postplea counsel failed to adequately preserve evidence that would cast doubt on her guilt, including inconsistencies between the autopsy findings and DNA laboratory reports; a statement by Ashlee Adams that would discredit the alibi of Corey Parkis, defendant's adult male roommate; and an unidentified neighbor's statement.

¶ 15 Defendant first argued that postplea counsel was ineffective for failing to present DNA reports that would have proven defendant's innocence, claiming counsel told her "that if he presented these reports *** they would make the State look bad and he didn't want to make the prosecution look bad." Additionally, defendant claimed the DNA reports "clearly exclude Petitioner and clearly match Corey Parkis, whom [*sic*] was never arrested for the crime." Defendant argued that she should have been cleared as a suspect because the autopsy report showed Alexus had semen in her rectum and "Corey's semen and other major male DNA profile

5

was found on the bedding where the crime occurred." In support, defendant attached a one-page document that was part of Dr. Denton's August 15, 2011, seven-page autopsy report, which stated, *inter alia*, that Alexus died from drowning, she had a contusion on her right forehead, and there was "[n]o evidence of sexual assault, fractures, or drug intoxication." Defendant also attached a redacted laboratory report, dated November 4, 2013, from the Illinois State Police (ISP) that demonstrated semen in Alexus's rectum and on a fitted sheet. The November 4, 2013, laboratory report indicated that "no conclusion could be drawn with respect to the source of the semen" obtained from the rectal swab of Alexus. Additionally, two laboratory reports from the ISP, dated January 9, 2012, and November 4, 2013, could not confirm the source of the semen on the fitted sheet.

¶ 16   On September 23, 2021, the circuit court summarily dismissed defendant's petition as *ipso facto* frivolous and patently without merit. The court determined defendant's claims, which were unsupported by affidavit, were barred by *res judicata* and waiver principles, and that her claim of actual innocence was unsupported by evidence and affidavit. Defendant filed a timely notice of appeal.

¶ 17                                     II. Analysis

¶ 18   On appeal, the parties dispute whether the circuit court should have summarily dismissed defendant's postconviction petition alleging ineffective assistance of counsel. Defendant asserts she stated the gist of a meritorious constitutional claim that postplea counsel failed to present evidence and testimony that, if presented, would have allowed defendant to withdraw her guilty plea. In response, the State argues that defendant failed to substantiate her claims with evidence sufficient to merit consideration before this court. We review the summary dismissal *de novo*.

*People v. Brown*, 236 Ill. 2d 175, 184 (2010) (citing *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998)).

¶ 19    The Act provides a method for persons under criminal sentence to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act provides a three-step process to resolve a criminal defendant's conviction or sentence that resulted from a violation of rights protected under the state or federal constitution. *People v. York*, 2016 IL App (5th) 130579, ¶ 15. Section 122-2 of the Act requires the postconviction petition "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2020). "At the first stage of postconviction proceedings, the court reviews the petition to determine whether it is frivolous and patently without merit." *York*, 2016 IL App (5th) 130579, ¶ 15. A postconviction petition is frivolous or patently without merit if it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12.

¶ 20    With this in mind, a defendant's petition at the first stage need only present a limited amount of detail (*id.* at 9 (citing *People v. Delton*, 227 Ill. 2d 247, 254 (2008); *People v. Torres,* 228 Ill. 2d 382, 394 (2008))) and need not include legal argument or citations to legal authority. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996) (citing *People v. Porter*, 122 Ill. 2d 64, 74 (1988)). A defendant need only allege enough facts to state the "gist" of a constitutional claim in order for her petition to be forwarded to the second stage. *Hodges*, 234 Ill. 2d at 9. Because most petitions are drafted at this stage by defendants with little legal knowledge or training, the threshold for survival at the first stage is low. *Id.* (citing *Delton*, 227 Ill. 2d at 254; *Torres*, 228 Ill. 2d at 394).

¶ 21    In support of her postconviction petition, defendant raises numerous claims of ineffective assistance by postplea counsel. To prevail on a claim of ineffective assistance of counsel, a

7

defendant must show that counsel's conduct fell below an objective standard of reasonableness and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). If defendant fails to prove either prong of the *Strickland* test, her claim for ineffective assistance of counsel must fail. *People v. Sanchez*, 169 Ill. 2d 472, 488 (1996). At the first stage of postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶ 22    We note that defendant raised the same claims on direct appeal, where she alleged that postplea counsel rendered ineffective assistance of counsel for failing to preserve certain evidence for appeal, including DNA evidence, a statement that would discredit a witness's alibi, and a witness statement made by defendant's unidentified neighbor. This court previously rejected defendant's claims of ineffectiveness of counsel, where the record demonstrated postplea counsel filed a facially valid Rule 604(d) certificate, and defendant failed to point to any evidence in the record to support her claim of ineffectiveness in the preparation and presentation of the motion to withdraw guilty plea. *Zumwalt-Jophlin*, 2020 IL App (5th) 160317-U, ¶¶ 35-36.

¶ 23    Because defendant raised ineffective assistance claims on direct appeal, we must first consider whether she is barred from raising the same claims in this postconviction proceeding. As a general rule, determinations of a reviewing court on the prior direct appeal are considered *res judicata* as to issues actually decided. *People v. Albanese*, 125 Ill. 2d 100, 105 (1988). *Res judicata* "deal[s] with the substance of postconviction claims and may serve as the basis for summary dismissal." *People v. Chatman*, 357 Ill. App. 3d 695, 701 (2005). Rules surrounding *res judicata*

will be relaxed, however, where the facts relating to the issue of counsel's incompetency do not appear on the face of the record. *People v. Eddmonds*, 143 Ill. 2d 501, 528 (1991).

¶ 24 We first address defendant's argument that testimonial evidence would cast doubt on her guilt. Specifically, defendant contends postplea counsel was ineffective where he failed to present both a witness statement by Adams, which would cast doubt on the alibi of Corey Parkis, and witness testimony of an unidentified "neighbor" who allegedly saw Parkis verbally abuse defendant's children on multiple occasions and that Parkis approached the neighbor and said "he never saw him [(Parkis)] there." This court previously reviewed defendant's claims that she received ineffective assistance of counsel as it related to these exact issues. Accordingly, these issues are barred by the principles of *res judicata*.

¶ 25 Moreover, *res judicata* aside, defendant failed to attach evidence supporting these two issues raised on appeal. "[W]hile a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *Delton*, 227 Ill. 2d at 254-55. Section 122-2 of the Act requires that evidence of the claim must be attached to the petition in the form of "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020). As a result, "failure to either attach the necessary ' "affidavits, records, or other evidence" or explain their absence is "fatal" to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal.' " *Delton*, 227 Ill. 2d at 255 (quoting *People v. Collins*, 202 Ill. 2d 59, 66 (2002), citing *Coleman*, 183 Ill. 2d at 380, quoting *People v. Jennings*, 411 Ill. 21, 26 (1952)).

¶ 26 Next, although defendant argues again that postplea counsel rendered ineffective assistance of counsel for failing to preserve DNA evidence that would cast doubt on her guilt, this claim is

not barred by *res judicata*. On direct appeal, this court determined postplea counsel was not ineffective because there was no showing of evidence in the record to support defendant's claim of ineffectiveness concerning DNA evidence. However, in her postconviction petition, defendant now presents documentary evidence, including the August 15, 2011, autopsy report and two laboratory reports, dated November 4, 2013, and January 9, 2012, to substantiate her claim.

¶ 27    First, we note that our supreme court in *People v. Allen*, 2015 IL 113135, ¶ 36, stated that "[t]he use of 'other evidence' in the phrase 'affidavits, records, or other evidence' indicates the legislature contemplated a wide range of documentary evidence would satisfy the evidentiary requirements at the first stage." With this in mind, although defendant did not attach an affidavit to her postconviction petition, the documentary evidence provided by defendant is enough for first-stage purposes. See *id*. Second, as stated above, because the record on direct appeal did not contain the evidence defendant now presents concerning inconsistencies with DNA evidence, we will consider the merit of defendant's claim. See *People v. Orange*, 168 Ill. 2d 138, 167 (1995) (exception to rule of *res judicata* applied where the defendant presented affidavits not contained in the trial court record to support ineffective assistance of counsel claim); see also *Eddmonds*, 143 Ill. 2d at 528 (trial court record did not include evidence defendant presented on appeal to substantiate claim that trial counsel was ineffective).

¶ 28    Defendant argues that evidence of semen in Alexus's rectum is conclusive proof that Alexus was subject to sexual assault or abuse within close proximity to her death, indicating someone other than defendant had a motive to kill Alexus. In support, defendant points to one page from a seven-page document, dated August 25, 2011, that provides the summary diagnosis of Dr. Denton stating, "No evidence of sexual assault, fractures, or drug intoxication." Defendant also points to an ISP laboratory report, dated November 4, 2013, that states: "no conclusion could be

10

drawn with respect to the source of the semen indicated in Exhibit #9D," which was a swab of Alexus's rectum. According to defendant, this evidence demonstrates she has a defense worthy of consideration or, at the very least, evidence that casts doubt on her guilt. We cannot agree.

¶ 29    Although defendant provided documentary evidence as stated above, this court is unable to determine how the inconsistency between the November 4, 2013, laboratory report and August 25, 2011, autopsy report demonstrates that defendant received the ineffective assistance of counsel. Defendant was neither charged with nor pled guilty to sexual assault. Moreover, there were no other suspects but defendant in this case, and there is no suggestion that another individual was with Alexus prior to her death.

¶ 30    Additionally, the record reveals that the State intended to admit into evidence two video statements of defendant. A review of the video statements indicated that defendant originally told police that she saw Smith on top of Alexus smothering her in the early morning hours of July 19, 2011. Immediately following defendant's statement, the interviewing officers informed defendant that Smith was arrested and spent the night in jail on July 19, 2011. The video statements further revealed that defendant was aware that Alexus was in the bathtub prior to her death. Although defendant denied striking Alexus on the forehead, the State planned to call Dr. Denton, who would testify that the "bump" on Alexus's forehead was recent, although it was not the cause of Alexus's death. Rather, defendant removed Alexus from the bathtub and placed her on the bathroom floor before moving Alexus to her bedroom. At no point did defendant provide lifesaving measures to Alexus to remove water from her lungs, even though defendant recognized Alexus was gasping for air. Sometime after, defendant placed panties on Alexus before defendant moved Alexus's dead body from her bedroom to a crawl space underneath the house to conceal the child's body.

¶ 31    While we recognize defendant's reasoning that Alexus could have been subject to sexual assault or sexual abuse proximate in time to her death, there is no arguable factual basis contained in the record to then conclude that another person, other than defendant, had a motive to kill Alexus. As stated above, to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's conduct fell below an objective standard of reasonableness and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We cannot conclude that defendant alleged sufficient facts to create an arguable question of prejudice. See *Hodges*, 234 Ill. 2d at 17.

¶ 32    Based on the evidence against defendant, including her own admissions surrounding Alexus's death, we cannot conclude that defendant has presented the gist of a constitutional claim. Accordingly, we conclude that the circuit court properly dismissed defendant's *pro se* petition at the first stage of proceedings.

¶ 33                                 III. Conclusion

¶ 34    The circuit court's order dismissing the defendant's *pro se* postconviction petition at the first stage of proceedings is affirmed, where defendant failed to state the gist of constitutional claim that she was denied effective assistance of counsel.

¶ 35    Affirmed.